No. 17-30097

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAN WAYNE STREETMAN,

Defendant-Appellant.

On Appeal From The United States District Court
For The Eastern District of Washington
District Court No. 2:16-cr-0078-RMP
The Honorable Rosanna Malouf Peterson, United States District Judge

DEFENDANT - APPELLANT'S
OPENING BRIEF

Matthew Campbell
Federal Defenders of Eastern
Washington & Idaho
10 N. Post Street, Ste. 700
Spokane, Washington 99201
(509) 624-7606
Email:  Matt_Campbell@fd.org
Attorney for Defendant-Appellant

# TABLE OF CONTENTS

I.  ISSUES PRESENTED FOR APPEAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.  Whether the District Court erred in calculating Mr. Streetman's guideline under U.S.S.G. § 2G2.1, which is fundamentally flawed . . . . . . . . . . . 1

    B.  Whether the District Court engaged in impermissible triple-counting by enhancing Mr. Streetman's sentence repeatedly based on the single factor of multiple counts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II..  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.  Nature of the Case, and Statement of Jurisdiction . . . . . . . . . . . . . . . . 1

    B.  Statement of Facts and Relevant Pretrial Rulings . . . . . . . . . . . . . . . . . 2

III.  SUMMARY OF ARGUMENT

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.  The District Court erred in sentencing Mr. Streetman pursuant to U.S.S.G. §2G2.1 over Mr. Streetman's objection, as that guideline is fundamentally flawed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.  The Sentencing Commission did not exercise its expertise in formulating this guideline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.  The political interference in the child pornography guidelines raises separation-of-powers concerns . . . . . . . . . . . . . . . . . . . . . 11

        3.  The guideline is not worthy of respect . . . . . . . . . . . . . . . . . . . . 14

    C.  The Court erroneously enhanced Mr. Streetman's sentencing exposure three-fold based upon the same factor of multiple offenses . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007)..........6

*United States v. Mackety*, 650 F.3d 621 (6th Cir. 2011) ...............................................6

*New York v. Ferber*, 458 U.S. 747 (1982) ....................................................................9

*United States v. Apodaca*, 641 F.3d 1077 (9th Cir.2011) ............................................6

*United States v. Battaglia*, 624 F.3d 348 (6th Cir. 2010) ...........................................6

*United States v. Carty*, 520 F.3d 984 (9th Cir.2008)...................................................6

*United States v. Engle*, 592 F.3d 495 (4th Cir. 2010) ................................................17

*United States v. Garro*, 517 F.3d 1163 (9th Cir. 2008)...............................................6

*United States v. Grzybowicz*, 747 F.3d 1296 (11th Cir. 2014)....................................7

*United States v. Holt*, 510 F.3d 1007 (9th Cir. 2007)................................................18

*United States v. Mistretta*, 488 U.S. 361 (1989) ..................................................*passim*

*United States v. Nagra*, 147 F.3d 875 (9th Cir. 1998) ..............................................18

*United States v. Reese*, 2 F.3d 870 (9th Cir. 1993) ............................................19, 20

**FEDERAL STATUTES**

18 U.S.C. § 1111....................................................................................................14

28 U.S.C. § 1291......................................................................................................2

18 U.S.C. § 2251......................................................................................................7

18 U.S.C. § 2251(a) .................................................................................................2

18 U.S.C. § 2252A(a)(5)(B) ...........................................................................2

18 U.S.C. § 2332g (a)(1)(A),þ(c)(2þ ..........................................................14

18 U.S.C. § 2332h (a)(1)(A),þ(c)(2þ ..........................................................14

18 U.S.C. § 2423(a) .......................................................................................2

18 U.S.C. § 3231 ...........................................................................................2

18 U.S.C. § 3553(a) ...........................................................................5, 16, 17

18 U.S.C. § 3742 ...........................................................................................2

28 U.S.C. § 1294(1) .......................................................................................2

18 U.S.C. § 3553(b) .....................................................................................10

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. §2G2.1 .............................................................. 4, 5, 14, 15, 16

U.S.S.G. §5G1.2(d) ...................................................................... 20, 21

U.S.S.G. §5K2.0 ..........................................................................................10

U.S.S.G. §5K2.11 ........................................................................................11

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| United States of America, | U.S.C.A. 16-30097 |
| Plaintiff, | D.C. No.: 2:16-cr-0078-RMP-1 |
| v. | Appellant's Opening Brief |
| Dan Wayne Streetman, | |
| Defendant. | |

## I. ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court erred in calculating Mr. Streetman's guideline
under U.S.S.G. §2G2.1, which is fundamentally flawed;  and

2.      Whether the District Court engaged in impermissible triple-counting by
enhancing Mr. Streetman's sentence repeatedly based on the single
factor of multiple counts.

## II. STATEMENT OF THE CASE

### A.      Nature of the Case and Statement of Jurisdiction

Mr. Streetman appeals the District Court's 60-year sentence.  That sentence

was handed down after Mr. Streetman had pled guilty to three counts of Production

of Child Pornography (E.R. 8-9), pursuant to a plea agreement. (E.R. 10-23).[1]

---

[1] "C.R." refers to the docket number of the Clerk's Record; "E.R." refers to the
Excerpt of Record; "PSR" refers to the Presentence Investigation Report.

The Judgment was filed on May 5, 2017 by the Honorable Rosanna Malouf Peterson, District Judge of the United States District Court for the Eastern District of Washington. (E.R. 24-30). The Notice of Appeal was filed on May 8, 2017 (E.R. 31-32), within the fourteen days provided by Rule 4(b) of the Federal Rules of Appellate Procedure.

The District Court had original jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction over appeals from final judgments under 28 U.S.C. § 1291, 28 U.S.C. § 1294(1), and 18 U.S.C. § 3742 (unlawful sentence). The judgment and sentence was a final decision subject to appeal under 28 U.S.C. § 1291.

Mr. Streetman is currently in federal custody at USP Victorville serving a sixty-year sentence. Mr. Alderman's expected release date is December 3, 2067.

### B.     Statement of Facts and Relevant Pretrial Rulings

Dan Streetman was indicted on May 3, 2016, on the charges of Production of Child Pornography in violation of 18 U.S.C. § 2251(a) [Counts 1-3], Transportation with Intent to Produce Child Pornography in violation of 18 U.S.C. § 2423(a) [Count 4], Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) [Count 5], along with forfeiture allegations. (E.R. 1-5).

On December 13, 2016, Mr. Streetman entered a plea of guilty pursuant to a plea agreement. (E.R. 8-9; 10-23). That plea agreement called for Mr. Streetman to

2

plead guilty to Counts 1-3, with Counts 4-5 being dismissed at the time of sentencing. (E.R. 10, 14). There was no agreement as to sentencing recommendations. (E.R. 18).

The PSR found that Counts 1-3 were specifically excluded from a grouping analysis. (PSR at ¶31). The PSR found the adjusted offense level for Count 1 to be 40, for Count 2 to be 36 and for Count 3 to be 40. (PSR at ¶¶39, 46, 54). The multiple Count adjustment added three levels (PSR at ¶57), resulting in a combined adjusted offense level of 43. (PSR at ¶58). A five-level enhancement was added for a pattern of activity (PSR at ¶59), while a three-level reduction was applied for acceptance of responsibility. (PSR at ¶¶60-61). The resulting adjusted offense level of 45 was reduced to the total offense level of 43, which represented the maximum allowable offense level. (PSR at ¶62).

The PSR found that Mr. Streetman had a criminal history score of zero points, which placed him in Criminal History Category I. The PSR computed his guideline custody range at 1080 month, by applying the maximum guideline range for each count (360 months) consecutively. (PSR at ¶116).

Mr. Streetman filed objections to the PSR. (C.R. 73). A number of objections were factual in nature, and not a subject of this appeal. Mr. Streetman also objected to the application of the five-level pattern-of-activity enhancement in concert with the multiple-count adjustment and consecutive sentencing. Mr. Streetman argued that applying these enhancements and sentencing provisions in concert amounted to impermissible triple-counting. Rather, Mr. Streetman asserted that the proper advisory

3

range was 292-360 months, based on application of the statutory maximum sentence. (C.R. 73 at 2). Mr. Streetman also objected to application of U.S.S.G. §2G2.1 as a whole, based upon the flaws in the guideline's adoption and numerous amendments thereafter. (C.R. 73 at 2-9). Mr. Streetman also submitted a sentencing memorandum in support of his request for concurrent sentencing between fifteen and thirty years. (C.R. 73 at 10-21).

At the sentencing hearing, the Court first heard argument on the factual sentencing objections, and ruled by granting in part and denying in part. (E.R. 62-65). After argument, the Court denied Mr. Streetman's objection to triple-counting. (E.R. 65-66). The Court also denied the challenge to the guideline as a whole. (E.R. 67-68). The Court computed the applicable guideline range, the statutory sentencing ranges and monetary obligations in conformity with the PSR. (E.R. 67).

The Court heard testimony from a victim's mother. (E.R. 69-86). The Court heard testimony from FBA Special Agent Leland McEuen regarding factual issues. (E.R. 87-108). Counsel for Mr. Streetman presented sentencing arguments. (E.R. 109-121). The government presented sentencing arguments. (E.R. 121-129). Counsel for Mr. Streetman presented rebuttal argument. (E.R. 131-32). Mr. Streetman spoke. (E.R. 132-38). The Court discussed sentencing factors. (E.R. 138-141). The Court sentenced Mr. Streetman to fifteen years' incarceration on Count 1, fifteen years on Count 2, and thirty years on Count 3, all to run consecutively for a total of sixty years' incarceration, followed by a lifetime supervised release term. (E.R. 141).

**4**

This timely appeal followed.

### III. SUMMARY OF ARGUMENT

Mr. Streetman's advisory guideline range was computed using U.S.S.G. §2G2.1. That guideline is fundamentally flawed. The sentencing Commission did not employ its traditional expertise in and knowledge in promulgating that guideline. Instead, the guideline was cobbled together based in large part on political concerns and Congressional pressure. The resulting guideline fails to reflect the institutional knowledge of the Sentencing Commission, and fails to serve the purposes of 18 U.S.C. § 3553(a). It was error for the District Court to calculate Mr. Streetman's guideline range pursuant to that guideline.

The District Court also erred in computing Mr. Streetman's sentencing exposure by effectively triple-counting the fact that Mr. Streetman pled guilty to three counts of production of child pornography. The District Court used this fact to enhance the offense level by three levels under a multiple count analysis. The District Court enhanced the offense level by five levels based upon a pattern of activity enhancement. The District Court then used those twice-enhanced sentences to compute the total punishment, which it arrived at by employing a guideline provisions calling for consecutive sentences. The end result was that Mr. Streetman's sentencing exposure was thrice-enhanced based upon the existence of multiple counts in this case. The result was a procedurally unreasonable sentence.

## IV. ARGUMENT

### A.    Standard of Review

Sentencing decisions are reviewed to determine whether they are reasonable. *Gall v. United States*, 552 U.S. 38, 46, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). Procedurally erroneous or substantively unreasonable sentence will be set aside. *United States v. Apodaca*, 641 F.3d 1077, 1080–82 (9th Cir.2011); *United States v. Carty*, 520 F.3d 984, 993 (9th Cir.2008).

In reviewing sentences for reasonableness, this Court "must first ensure that the district court committed no significant procedural error, such as ... treating the Guidelines as mandatory...." *Gall*, 552 U.S. at 51, 128 S.Ct. 586. Impermissible double counting renders a sentence procedurally unreasonable, *United States v. Battaglia*, 624 F.3d 348, 350-51 (6th Cir. 2010), and requires vacatur and remand. *United States v. Mackety*, 650 F.3d 621, 628 (6th Cir. 2011). Assuming that the district court's sentencing decision is procedurally sound, this Court must then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. *Id.*

In applying this standard, this Court reviews the district court's interpretation of the Sentencing Guidelines *de novo*, its application of the Guidelines to the facts for abuse of discretion, and its factual findings for clear error. *United States v. Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008).

**B.   The District Court erred in sentencing Mr. Streetman pursuant to U.S.S.G. §2G2.1 over Mr. Streetman's objection, as that guideline is fundamentally flawed**

**1.   The Sentencing Commission did not exercise its expertise in formulating this guideline**

When Congress first enacted 18 U.S.C. § 2251 in 1978, the maximum penalty was less than what is now the mandatory minimum. Then, the offense of production of child pornography carried a maximum penalty of 10 years' imprisonment, and there was no mandatory minimum sentence. *See* Pub.L. 95-225, § 2(a), 92 Stat. 7. There was a 15-year maximum and a mandatory 2-year sentence in the case of a prior violation of the same statute. *Id.*

The Committee Reports from both the House of Representatives and Senate show Congress never intended the statute to apply to the conduct here--the taking of photographs for personal reasons. While Congress has since added language to the statute about using materials shipped in interstate commerce and court decisions have held that the use of a camera or computer made out-of-state is sufficient to bring the conduct within the statute, *see, e.g., United States v. Grzybowicz*, 747 F.3d 1296, 1306-1307 (11th Cir. 2014), Congress initially targeted those who shipped the images across state lines:

> There is presently no Federal Statute that prohibits the use of children in the production of materials that depict explicit sexual conduct. The Committee bill would prohibit the production of such materials for this purpose if the materials involved were to be mailed or otherwise transported in interstate commerce.

7

S. Rep. No. 95-438, at 3 (1977).

The concern was with the business of child pornography as evidenced by the conclusion "[t]hat child pornography and child prostitution have become highly organized, multimillion dollar industries that operate on a nationwide scale." *Id.* at 5. The concern was that "thousands of copies can be made from a single negative" and that "[a]s a result the cost of producing child pornography are minimal but the profits are often enormous." *Id.* at 6. Congress was confident, too, that federal prosecutors would not pursue "individual acts involving the use of children."

> The Committee is aware that Section 2251 may literally encompass isolated, individual acts involving the use of children in the production of sexually explicit materials. Section 2251 is not intended to reach all such isolated incidents, which are often are more appropriately the subject of state or local concern. The Committee fully intends that federal prosecutors will wisely exercise their discretion to reach only those cases which are the proper subject of Federal concern.

*Id.* at 16. The Committee Report from the House of Representatives shows, as well, that the legislation was aimed at something more than photographs taken for private purposes: "[T]he Committee agreed to report out a section of the bill which would penalize those people who induce a child to engage in sexually explicit conduct for promoting a film or photograph which would be transported in interstate commerce." H.R. Rep. No. 95-696, at 10 (1977).

With the advent of the Internet and the widespread access to child pornography, the penalties have increased dramatically. In 1986, Congress increased the mandatory minimum to 5 years for repeat offenders. *See* Pub.L. 99-500, Title I, §

**8**

101(b), 100 Stat. 1783-74. Ten years later, in 1996, Congress established a minimum mandatory sentence of 10 years for a first offender, with a maximum penalty of 30 years. *See* Pub.L. 104-208, Div. A, Title I, § 101(a), 110 Stat. 3009-30. The penalty for those with a prior conviction was increased to a minimum mandatory of 15 years, with a maximum sentence of 30 years and, for the first time, the recidivism provision applied to a conviction based on "the laws of any State relating to the sexual exploitation of children." *Id.* In 2003, Congress increased the penalties to what they are now: a 15-year mandatory minimum and a 30-year maximum for first offenders and a 25-year mandatory minimum with a 50-year maximum for those with a prior qualifying conviction. *See* Pub.L. 108-21, Title I, § 103(a)(1)(A), 117 Stat. 652, 653, 683.

In modifying § 2251 and increasing the penalties, Congress has continued to make findings that show it was addressing something more aggravated than the taking of photographs for private purposes. Among the findings in support of the 1986 amendments, was that "child exploitation has become a multi-million-dollar industry, infiltrated and operated by elements of organized crime, and by a nationwide network of individuals openly advertising their desire to exploit children." Pub.L. 99-500, Title I, § 101(b), 100 Stat. 1783-74. When in 2003, Congress increased the maximum penalties to their current levels, the findings included a quote from the Supreme Court decision in *New York v. Ferber*, 458 U.S. 747, 760 (1982): "The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe penalties on persons selling, advertising,

or otherwise promoting the product." Pub.L. 108-21, Title I, § 103(a)(1)(A), 117 Stat. 676. In its 2008 findings supporting a modification of the statute, Congress included the observation that "Child pornography is estimated to be a multibillion dollar industry of global proportions, facilitated by the growth of the Internet." Pub.L. 110-358, § 102, 122 Stat. 4001.

Each sentencing guideline "carve[s] out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." U.S.S.G., Ch. 1, Ft. A, §4(b). A district court may depart from a guideline in an atypical case outside this "heartland" - that is, where there is "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the" guidelines. 18 U.S.C. § 3553(b); U.S.S.G. §5K2.0. The fact that Congress intended to punish the production of child pornography for the purpose of sales or other distribution thus provides ample support for a departure in this case. The creation of pornographic images for personal use was simply not the harm that Congress intended to punish in drafting this statute. Thus, Mr. Streetman's conduct falls outside the heartland of the type of conduct envisioned by the statute.

"A 'departure' is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves. It is frequently triggered by a prosecution request to reward cooperation . . . or by other factors that take the case 'outside the heartland' contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense." *United States v. Cruz-Perez*, 567 F.3d 1142, 1146

(9th Cir. 2009). The Sentencing Guidelines provide that a below-guideline sentence might be warranted where the offense conduct "may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue." U.S.S.G. §5K2.11. This is precisely the issue with Mr. Streetman. Even if the statutory and guideline framework is generally appropriate, its application is not appropriate under the particular facts presented here.

### 2. The political interference in the child pornography guidelines raises separation-of-powers concerns

The Sentencing Commission was designed to be an independent, neutral, expert agency in the Judicial branch. In *United States v. Mistretta*, 488 U.S. 361 (1989), the Supreme Court rejected a separation-of- powers attack on the constitutionality of those Guidelines in general because the Commission appeared to have enough freedom from the political branches to truly act as a neutral and expert agency when promulgating Guidelines. The *Mistretta* court understood the Commission to be a "peculiar institution" because the Commission, as formed by the Sentencing Reform Act of 1984, is an "independent" and "expert" agency within the Judiciary that exercises "administrative powers" to create legislative-like rules to guide individual adjudications in the area of criminal sentencing – an area that "has been and should remain 'primarily a judicial function.'" *Mistretta*, 488 U.S. at 368, 379, 384, 390, 404 (quoting legislative report).

11

The *Mistretta* Court saw the new agency to have both substantial congressional guidance and substantial discretion in its promulgation of Guidelines. *Id.*, 374-78, 393-94, 407-08. Thus, the Court essentially held that the Sentencing Reform Act, when delineating the Commission's relationship with the political branches, had successfully navigated the Scylla and Charybdis of excessive independence and excessive subservience. *Id.*

Nonetheless, the *Mistretta* Court said it was "troubled" somewhat by the defendant's argument that "the Judiciary's entanglement in the political work of the Commission undermines public confidence in the disinterestedness of the Judicial Branch." *Id.* at 407. Because the Commission is a part of the Judiciary and is engaged in work that is "primarily a judicial function," *id.* at 390, the Judiciary's imprimatur of "impartiality and nonpartisanship" is stamped on each Guideline. *Id.* at 407. Indeed, the cover of the Guidelines Manual says the Guidelines are promulgated by the Commission – an agency of the Judiciary. The *Mistretta* Court was "troubled" because, if the Guidelines are not in fact impartial and nonpartisan, the Judiciary would in fact be promulgating the edicts of a political branch, and so its "integrity" would be "undermined." *Id.* at 404, 407.

The *Mistretta* Court allayed its own concern by reiterating its understanding of the nature of the Sentencing Commission and its work. The Court approved the Judiciary's entanglement in the Commission's somewhat political work because the Court believed the promulgation of the Guidelines would in fact be "essentially a

12

*neutral* endeavor and one in which judicial participation is peculiarly appropriate." *Id.* at 407 (italics added). Neutral, "judicial experience and expertise" would in fact "inform the promulgation" of Guidelines. *Id.* at 408. The Court believed this would be so because the Commission was created as "an independent agency in every relevant sense," was expressly charged with using sciences and expertise to develop, review and revise Guidelines, and was left with "significant discretion to determine which crimes have been punished too leniently, and which too severely." *Id.* at 374, 377, 393.[1]

The *Mistretta* Court also described an important boundary – a limit to the Judiciary's permissible "entanglement" in "political work." *Id.* at 407. Setting that boundary, the Court reiterated that "[t]he legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship." *Id.* at 407. "That reputation may not be borrowed by the political Branches to cloak their work in the neutral colors of judicial action." *Id.* The Supreme Court indicated that the separation-of-powers doctrine would be breached if a political branch tried to "cloak [its own] work" in the "neutral colors of judicial action" by commandeering the Sentencing Commission. *Id.* at 407.

---

[1]
The Court observed that "[d]eveloping proportionate penalties for hundreds of different crimes by a virtually limitless array of offenders is precisely the sort of intricate, labor-intensive task for which delegation to an expert body is especially appropriate." *Id.* at 379.

### 3. The guideline is not worthy of respect

The guideline range set forth in the PSR of 1080 months is in excess of conduct that is far more aggravated. The comparison of his offense to others with similar penalties shows the penalties are disproportionally harsh. Had he committed second degree murder in violation of 18 U.S.C. § 1111, he would not be facing a mandatory minimum, and his guideline range would be roughly 20 to 24 years for Criminal History Category I. The penalties for acts of terrorism are less than those Mr. Streetman faces. If an individual used a "weapon that is designed . . . to release radiation at a level dangerous to human life," in violation of 18 U.S.C. § 2332h (a)(1)(A), (c)(2), he would be facing a harsh 30-year minimum mandatory sentence, as would someone who used a missile designed to destroy an aircraft in violation of, 18 U.S.C. § 2332g (a)(1)(A), (c)(2).

Between October 1, 2015 and September 30, 2016, nearly 30% of the defendants sentenced under U.S.S.G. §2G2.1 received downward variances or other non-government sponsored below-guideline sentences.[1] There has been a demonstrated trend in downward variances in cases sentenced under U.S.S.G. §2G2.1.

---

[1] *See* United States Sentencing Commission Quarterly Report, Fourth Quarter 2016, at 16 *available at*

http://www.ussc.gov/sites/default/files/pdf/research-and-publications/ federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_4th_16_ Final.pdf (last accessed December 27, 2016).

In 1992 88.9% of defendants received a within-guideline sentence and none received a below-guideline sentence.[2] In fiscal year 2007, 63% of defendants received a within-guideline sentence, while 11% of defendants sentenced under U.S.S.G. §2G2.1 received sentences below the guideline range.[3] In fiscal year 2015, by contrast, only 42% of defendants sentenced under U.S.S.G. §2G2.1 received within-guideline sentences.[4]

This trend toward below-guideline sentences has an inverse relationship with the guideline itself, which has been steadily increasing. In the original 1987 guidelines, U.S.S.G. §2G2.1 provided for a base offense level of 25. U.S.S.G. §2G2.1 (1987). In 1996, the Commission increased the base offense level to 27 and added a 2-level increase if the offense involved the use of a computer. U.S.S.G. App C., amend 537 (Nov. 1, 1996). In 2004, the Commission again increased the base offense level to the current level of 32 and added five additional specific offense characteristics. U.S.S.G. App C., amend. 664 (Nov. 1, 2004).

---

[2] 2012 Report, p. 254.

[3] United States Sentencing Commission Final Quarterly Report 2007, at 14, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-entencing-statistics/quarterly-sentencing-updates/USSC_2007_Quarter_Report_Final.pdf (last accessed December 27, 2016).

[4] United States Sentencing Commission Final Quarterly Report 2015, at 14. *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-015_Quarterly_Report_Final.pdf (last accessed December 27, 2016).

This inverse relationship implies that district courts often feel that the advisory guideline range recommended by application of U.S.S.G. §2G2.1 yields unreasonably inflated ranges inconsistent with 18 U.S.C. § 3553(a), and precludes imposition of a sentence of imprisonment that is "greater than necessary" to fulfill § 3553(a)'s statutory sentencing factors. This is corroborated by the statement of reasons forms collected in the 70 out of 200 production cases in which courts downwardly departed in fiscal year 2010. In 53.5% of those 70 cases, the court varied downward based on the "nature and circumstances of the offense [and/or] the history and characteristics of the defendant," and in 18% of those cases, the court varied downward "based on the defendant's mental or emotional conditions."[5]

That judges are choosing to vary in child pornography cases is not indicative of judges who impose sentences "inconsistently and without regard to the federal sentencing Guidelines" process, but rather as an important mechanism by which the courts provide feedback to the Sentencing Commission.[6] After all, the Commission envisioned that such feedback from the courts would improve its ability to fulfill its ongoing statutory responsibility under the Sentencing Reform Act to periodically

---

[5] 2012 Report, p. 255–56.

[6] Troy Stabenow, *A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines,* 24 Fed. Sent'g Rep. 108, 109 (2011).

refinements to the Guidelines.[7] Moreover, the courts have held that a district court may "'vary from Sentencing Guideline ranges based solely on policy considerations, including disagreements with the Guidelines.'" *United States v. Engle,* 592 F.3d 495, 502 (4th Cir. 2010) (quoting *Kimbrough*, 552 U.S. at 101); *see also Spears v. United States*, 555 U.S. 261 (2009) (emphasizing a district court may categorically reject an unreasonably high Guideline that "yielded an excessive sentence in light of the sentencing factors outlined in 18 U.S.C. § 3553(a)").[8]

For these reasons, it was error to overrule Mr. Streetman's objection and calculate sentencing ranges pursuant to this invalid guideline.

### C.  The Court erroneously enhanced Mr. Streetman's sentencing exposure three-fold based upon the same factor of multiple offenses

As set forth *ante*, the PSR enhanced Mr. Streetman's guideline range by three levels based upon a multiple count analysis. The PSR also added a five-level

---

[7] *See* U.S. Sent'g Comm'n, *Report to Congress: Downward Departures from the Federal Sentencing Guidelines* (Oct. 2003), at 5, 20, *available at* http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/departures/200310-rtc-downward-departures/departrpt03.pdf (last accessed December 27, 2016).

[8] "The Guidelines and congressionally directed ranges are significantly harsher than community sentiment recommends." Judge James S. Gwin, Juror Sentiment on Just Punishment: Do the Federal Sentencing Guidelines Reflect Community Values?, 4 Harv. L. & Pol'y Rev. 173, 195 (2010).

enhancement for a pattern of activity. The District Court adopted these calculations. The Court ultimately imposed consecutive sentences as well. Mr. Streetman's ultimate sentence was thus enhanced in three distinct ways for the same finding – that he had committed multiple offenses. This procedure constituted impermissible triple-counting.

"Impermissible double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007) (quoting *United States v. Nagra*, 147 F.3d 875, 883 (9th Cir. 1998)). In this case, the fact that Mr. Streetman committed multiple offenses, as part of pattern of activity involving prohibited sexual conduct, led directly to both an increase in his higher offense level under the grouping rules and an increase under § 4B1.5(b). The harm addressed in the grouping rules is, clearly, that of multiple instances of criminal conduct. *See* Introductory Commentary to Part D ("The rules in the Part seek to provide incremental punishment for significant additional criminal conduct.") The adjustment in § 4B1.5 is likewise directed to address the harm from repeated instances of conduct.

The double counting here was presumably intended by the Commission, because § 4B1.5(b)(1) specifies that the increase shall be over "the offense level determined under Chapters Two and Three." However, on the issue of impermissible double counting, the Commission's intent is not the end of the inquiry. For example,

**18**

in *United States v. Reese*, 2 F.3d 870, 895 (9th Cir. 1993), this Court first concluded "that the result appellants seek to avoid is the result intended by the Commission." Rather than considering the matter resolved, the court stated, "The question before us is whether such a result is permissible." *Id.*

In *Reese*, the court referred to the test for impermissible double counting noted above, namely whether an increase in Guidelines level is due to a kind of harm that has already been fully accounted for in the defendant's Guidelines calculations. The court stated that, "In practical terms, this means that impermissible double counting is to be found where one Guidelines provision is akin to a lesser included offense of another, yet both are applied." *Id.* at 895 (internal quotation marks omitted).

In the context of base offense levels and specific offense characteristics, the *Reese* court then said:

> Thus, the use of a single aspect of conduct both to determine the applicable offense guideline and to increase the base offense level mandated thereby will constitute impermissible double counting only where, absent such conduct, it is impossible to come within that guideline. If, on the other hand, it is possible to be sentenced under a particular offense guideline without having engaged in a certain sort of behavior, such behavior may be used to enhance the offense level, for in this situation, the guideline's base offense level will not necessarily have been set to capture the full extent of the wrongfulness of such behavior.

*Id.*

If this test were applied to the question of double counting raised here, this Court would conclude that there had been no double counting. It is possible to have levels added under § 3D1.4 without having levels added under § 4B1.5, such as when

19

the offense is not a covered sex crime. It is also possible to have levels added under §
4B1.5 without having levels added under § 3D1.4, if the pattern of activity does not
yield multiple groups of offenses (either because the other instances are not charged
or because they involve the same victim and thus only one group of offenses).

However, the test that *Reese* applied "in practical terms" does not adequately
capture the ultimate test that this Court has pronounced for impermissible double
counting. The same harm is indeed adequately captured by each of § 3D1.4 and §
4B1.5, so Mr. Norris has had levels added twice for the same conduct and same harm.
In the context of grouping and § 4B1.5, this Court should not apply the test that *Reese*
developed in the different context of base offense level and specific offense
characteristics. Alternatively, if *Reese* were deemed controlling, it should be revised by
the court *en banc* to more adequately reflect the "same harm" test for which it has
served as a stand-in.

Further complicating matters is that the District Court chose to sentence
consecutively on the three counts. It appears that the District Court applied U.S.S.G.
§5G1.2(d). That section provides that if the sentence imposed on the count with the
highest statutory maximum is less than the total punishment, the sentence imposed on
one or more of the other counts shall run consecutively to the extent necessary to
make the combined sentence equal to the total punishment. Here, the PSR called for
a total punishment of 1080 months. The District Court could only approximate that

20

sentence by sentencing consecutively, based upon the statutory maximum sentence of 360 months for each count.

The flaw in this logic, however, is that the guideline computation which led to the total punishment already accounted for the existence of multiple counts – and it already did so *twice*. The total punishment figure reflected the multiple count analysis *and* the pattern of activity enhancement. Application of U.S.S.G. §5G1.2(d) thus represented the third guideline application enhancing Mr. Streetman's sentence for the same harm – the existence of multiple counts.

## CONCLUSION

For the reasons set forth above, Mr. Streetman respectfully requests that his conviction be vacated and the matter remanded to the District Court with instructions to dismiss the superseding indictment.

DATED:  August 28, 2017          Respectfully submitted,

By: */s/ Matthew Campbell*
    Matthew Campbell
    Federal Defenders of Eastern
    Washington and Idaho
    10 N. Post Street, Ste. 700
    Spokane, Washington 99201
    (509) 624-7606
    Email:  Matthew_Campbell@fd.org
    Attorney for Defendant-Appellant

## STATEMENT OF RELATED CASES

Counsel for Dan Wayne Streetman, U.S.C.A. No. 17-30097, hereby certifies that I am not aware of any related cases within the meaning of Circuit Rule 28-2.6.

DATED: August 28, 2017

/s/ Matthew Campbell
Matthew Campbell

## CERTIFICATE OF SERVICE

I, Matt Campbell, a member of the Bar of this Court, hereby certify that, on August 28, 2017, I caused to be electronically filed the foregoing "Defendant-Appellant's Opening Brief" with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate NextGen CM/ECF system. I certify that all participants in the case are registered NextGen CM/ECF users and that service will be accomplished by the appellate NextGen CM/ECF system.

/s/ *Matthew Campbell*
Matthew Campbell

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f),
29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 16-30097

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is [            ] words or [            ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is 4852 words or [            ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [            ] words or [            ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [            ]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [            ] words or [            ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [            ] words or [            ] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [            ] words or [            ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [            ] words or [            ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant: /s/Matthew Campbell    Date: Aug 28, 2017

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*